FILED
United States Court of Appeals
Tenth Circuit

August 6, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

ERIC F. SCHOLL, individually and
as parent and next friend of J.J.S., a
minor child; JACQUELINE R.
SCHOLL, individually and as parent
and next friend of J.J.S., a minor
child; J.J.S., a minor child,

    Plaintiffs - Appellants,

v.

No. 25-5053

WALGREENS SPECIALTY
PHARMACY, LLC, d/b/a Alliance Rx
Walgreens Prime; WALGREENS
SPECIALTY PHARMACY
HOLDINGS, LLC, a foreign
company,

    Defendants - Appellees.

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:21-CV-00363-JDR-MTS)**

_____

Jason A. McVicker (Andrew C. Jayne and Bryan J. Seaton with him on the
briefs), of Jayne Peters McVicker Burke Askew & Parker, Tulsa, Oklahoma,
for Plaintiffs-Appellants.

James E. Goldschmidt of Quarles & Brady LLP, Milwaukee, Wisconsin
(Nathan J. Oesch and Ellen E. Anderson of Quarles & Brady LLP, Milwaukee,
Wisconsin; Stacy A. Alexejun of Quarles & Brady LLP, Madison, Wisconsin,
with him on the brief), for Defendants-Appellees.

_____

Before **MATHESON**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

Plaintiffs-Appellants Eric and Jacqueline Scholl and their minor daughter J.J.S. (the Scholls) sued Walgreens Specialty Pharmacy, LLC and Walgreens Specialty Pharmacy Holdings, LLC for negligence under Oklahoma law after Walgreens did not timely fill a prescription for J.J.S., and she then fell ill. The district court granted Walgreens' motion for summary judgment, concluding Walgreens had no duty to fill the prescription under the circumstances here. The Scholls appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

**A**[1]

In May 2020, Eric and Jacqueline Scholl's then-12-year-old daughter J.J.S. was diagnosed with vaginal agenesis, a rare congenital condition in which the body cannot expel menstrual material. Her symptoms included debilitating abdominal pain. J.J.S.'s physician, Dr. Catherine Hildebrand,

_____

[1] The facts in this opinion come from our *de novo* review of the appellate record. *See Est. of Beauford* v. *Mesa County*, 35 F.4th 1248, 1257 n.2 (10th Cir. 2022) (reviewing the record *de novo* after the district court granted summary judgment to defendants).

presented the Scholls with several treatment options, including a complete hysterectomy; surgery to remove soft tissue in the vaginal canal; and injections of a drug called Lupron Depot, a hormone that prevents ovulation. Faced with only "bad choices," the Scholls chose the Lupron Depot injections. RIII.15.

On June 1, 2020, Dr. Hildebrand sent a referral form to AbbVie, the manufacturer of Lupron Depot, asking whether J.J.S.'s insurance would cover the prescription. AbbVie responded the next day recommending Dr. Hildebrand obtain "prior authorization"[2] from J.J.S.'s health insurer, Blue Cross and Blue Shield of Oklahoma (BCBS). AbbVie informed Dr. Hildebrand that the medication could be filled at AllianceRx, a "specialty pharmac[y]" owned by Walgreens.[3] RI.106, 176. AbbVie also noted the "approximate turn-around time is 7–14 days after initiation with the insurance company." RI.106. On June 2, AbbVie forwarded prescription information to Walgreens. The next day, Walgreens told Dr. Hildebrand's office that it had received the prescription.

---

[2] "Prior authorization," also known as "preauthorization," is an insurance term for "pre-determin[ing] whether a drug is covered under the medical benefits portion of an insured's plan." RI.63; *see* RIII.10.

[3] Specialty pharmacies dispense "medications that you cannot get at a local Walgreens," such as prescriptions "that have to be administered by a doctor rather than a patient" or that must be "handled" or "stored in a particular way." RIII.34.

Between June 3 and 11, Walgreens investigated whether the prescription for Lupron Depot would be covered by BCBS without prior authorization. On June 11, Walgreens determined BCBS indeed had to preauthorize the drug before they could dispense it, and only the prescribing physician—Dr. Hildebrand, not the pharmacy—could obtain that approval from the insurer. That same day, Walgreens faxed Dr. Hildebrand's office the paperwork she would need to send to BCBS for its preauthorization.

On June 15, frustrated by the lack of progress with getting the prescription filled, Ms. Scholl called Walgreens. A Walgreens employee told her the pharmacy could not fill J.J.S.'s prescription until it received preauthorization from BCBS. Ms. Scholl explained the urgent need for the medication and asked whether she could bypass the insurance delays by paying for the drug out of pocket. The employee said out-of-pocket payments were forbidden. Walgreens then twice called Dr. Hildebrand's office, emphasizing the prescription could not be filled until BCBS preauthorized it.

The next day, June 16 at 10:48 a.m., a Walgreens employee spoke with Dr. Hildebrand's office a third time and learned Dr. Hildebrand still had not filed the preauthorization request with BCBS. In response, Walgreens put J.J.S.'s prescription "on hold" and internally designated the

4

prescription as "no go."[4] RI.144, 172, 181. That afternoon, Walgreens closed the prescription file. But almost immediately thereafter, Dr. Hildebrand finally received the preauthorization from BCBS. Later that same day, Dr. Hildebrand's office and Ms. Scholl provided the preapproval information to Walgreens.[5] The record contains no evidence about what, if anything, Walgreens told the Scholls or Dr. Hildebrand upon receiving BCBS's preauthorization.

For nearly a month-long period—between June 17 and July 12, 2020—neither the Scholls nor Dr. Hildebrand called Walgreens to check on the status of the prescription, and Walgreens did not independently update the Scholls or Dr. Hildebrand.[6] Walgreens' file for J.J.S.'s prescription

---

[4] According to the deposition testimony of Walgreens' corporate representative, the "no go" status indicated "there was a reason that we could not proceed with the prescription . . . . So it doesn't mean we won't fill the prescription, it means until a [preauthorization from the insurer] is obtained, we're going to put it on hold." RIII.83.

[5] Walgreens disputes that it received the preauthorization information on June 16. The district court resolved this dispute "in favor of the Scholls and assume[d] that the information was communicated to Walgreens at approximately 12:53 p.m. on June 16, 2020." RV.6–7. We make the same assumption. *Est. of Beauford*, 35 F.4th at 1261 (recognizing that, at summary judgment, we "construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in [their] favor").

[6] The record shows no communications during this time among Walgreens, the Scholls, Dr. Hildebrand, and BCBS that bear on this appeal.

remained closed. And J.J.S. continued to suffer. On July 8, she was hospitalized with extreme abdominal pain and underwent surgery. She was released from the hospital a few days later.

On July 13, Dr. Hildebrand's office called Walgreens and said J.J.S. needed Lupron Depot urgently. Walgreens responded that the prescription file had been closed since June 16 because the preauthorization was never submitted. Dr. Hildebrand's office replied the preauthorization information had in fact been submitted to Walgreens and J.J.S. needed the medication "ASAP." RI.182. Walgreens said it "would verify the Prior Authorization and initiate the order." RI.67. That same day, Walgreens created a new "fill request" for the Lupron Depot prescription. RI.182.

On July 15, J.J.S. was hospitalized again due to abdominal pain and vomiting. The next day, July 16, Dr. Hildebrand's office called Walgreens and reiterated J.J.S. was in the hospital and needed Lupron Depot immediately. Walgreens elevated the prescription request to "stat" priority. RI.182.

The Lupron Depot prescription was delivered to Dr. Hildebrand's office on July 21 and administered to J.J.S. that day.

**B**

In July 2021, the Scholls filed a lawsuit in Oklahoma state court, alleging one count of negligence against Walgreens. They claimed

Walgreens had "promised . . . to deliver a Lupron Depot shot to J.J.S.'s physician on a timely basis to prevent J.J.S. from menstruating in July of 2020." RI.17. Because of this "promise," the Scholls alleged, Walgreens had a legal duty to "timely deliver the Lupron Depot shot," and Walgreens breached that duty by not filling the prescription. RI.17. Walgreens removed the case to federal district court, invoking diversity jurisdiction under 28 U.S.C. § 1332.

After discovery closed in August 2023, Walgreens filed a motion for summary judgment. Walgreens contended Oklahoma substantive law applied to the negligence claim. *See* RI.69–70 (citing *Erie R.R. Co.* v. *Tompkins*, 304 U.S. 64 (1938)). Walgreens recognized it owed a duty to fill J.J.S.'s prescription beginning July 13—the date the company said it took "affirmative action to assume the duty to fill J.J.S.'s Lupron Depot prescription[.]" RI.78. Walgreens argued a pharmacist's duties in Oklahoma are "clearly defined and limited under the Pharmacy Act[,]" OKLA. STAT. tit. 59, § 353 *et seq.* RI.70 (quoting *Pharmcare Okla., Inc.* v. *State Health Care Auth.*, 152 P.3d 267, 273 (Okla. Civ. App. 2006)). That statute, Walgreens said, creates "no express duty for a pharmacy to fill a prescription within a certain amount of time." RI.70 (first citing *Pharmcare*, 152 P.3d at 273; and then citing OKLA. ADMIN. CODE §§ 535:10-9-2 & 535:15-3-2).

7

Still, Walgreens acknowledged that, under Oklahoma law, "an affirmative act" or a voluntary undertaking can give rise to a duty. RI.71 (citing *Harwood* v. *Ardagh Grp.*, 522 P.3d 473, 481 (Okla. 2022)). Walgreens then pointed to its corporate "policies and procedures [for] attempting to obtain prior authorization" and maintained, to the extent those policies created "any duty" to fill the Lupron Depot prescription, it did not breach that duty. RI.79–80. Notably, Walgreens insisted that for most of the period discussed by the complaint—specifically, from June 16 (when Walgreens closed J.J.S.'s prescription file until July 13 (when Walgreens re-opened the prescription file and began to fill the prescription)—it owed no duty to fill J.J.S.'s prescription. *See* RI.77–78 (Walgreens arguing no duty existed because it did not "affirmatively act to fill the prescription" over that period).[7]

---

[7] Walgreens also argued it was entitled to summary judgment on the basis of causation. The district court did not rule on causation, and the Scholls do not develop any appellate arguments related to causation. We therefore do not consider the causation element here.



**Party Positions at the District Court on Walgreens' Duty to Fill J.J.S.'s Prescription[8]**

The Scholls opposed summary judgment. They agreed Oklahoma substantive law applied but insisted Walgreens was "comprehensively wrong" about the legal duties of pharmacists under state law. RIII.22

---

[8] It is unclear when, precisely, the Scholls believe Walgreens' duty to fill the prescription began. In their complaint, the Scholls suggest Walgreens promised to fill the prescription as early as the June 15 call between Ms. Scholl and Walgreens. However, in their summary judgment opposition, the Scholls suggest Walgreens' negligence began as early as June 2, 2020. In any event, we see no difference between these dates that would bear on the disposition of this appeal, and we assume the Scholls alleged Walgreens owed a duty as early as June 2.

The parties agree Walgreens owed a duty to fill the prescription after July 13, 2020. The district court noted the Scholls "have not pointed to any injuries that were caused by Walgreens's conduct after July 13." RV.14 n.16. Accordingly, the court "focuse[d] its analysis on the alleged failures that took place on or before July 13, 2020." RV.15 n.16. The parties similarly focus their appellate arguments on the existence of a duty before July 13. Given this shared understanding, when discussing "duty" throughout this opinion, we refer specifically to a duty by Walgreens to fill J.J.S.'s prescription before July 13, and we specify otherwise only as necessary.

(heading format omitted). The Scholls rejected Walgreens' suggestion that its corporate policies might be legally relevant, arguing corporate policies "do not establish a legal duty or the applicable industry-wide standard of care." RIII.22 (quoting *Cruz* v. *Am. Nat'l Red Cross*, 2022 WL 2813237, at *3 (10th Cir. 2022) (unpublished) (interpreting Kansas law)). Rather, Walgreens owed duties over the *entire* period alleged in the complaint, and those duties arose from Oklahoma statutes, regulations, and common law.

## C

The district court granted summary judgment to Walgreens in a comprehensive written order. Agreeing with the parties that Oklahoma tort law governed the negligence claim, the district court viewed the briefing as presenting a "threshold question": Before July 13, 2020, "[d]id Walgreens have a duty to fill [J.J.S.'s] prescription for Lupron Depot"?[9] RV.9. The district court answered *no*. It surveyed Oklahoma law and found no authority suggesting pharmacists "have a general duty to fill prescriptions."

---

[9] The Scholls' complaint framed their negligence claim as implicating Walgreens' duty "to deliver a Lupron Depot shot to J.J.S.'s physician on a *timely* basis[.]" RI.17 (emphasis added). The district court seemed to view the more general duty question (whether Walgreens had any duty to fill J.J.S.'s prescription before July 13) as encompassing the narrower timeliness question (whether Walgreens had a duty to *timely* fill the prescription before July 13). On appeal, the parties follow the district court's lead and focus on a general duty to fill. We see no difference between the general and the narrower duties that would bear on the disposition of this appeal. Nor do the parties argue otherwise.

RV.14. Just the opposite: Oklahoma law seemed to indicate no such duty exists. The court pointed to a 2022 amendment to state pharmacy regulations, which expressly "clarif[ied] a pharmacist's right not to fill a valid prescription." RV.12 (quoting 2022 OKLA. REG. TEXT 600564 (NS) (codified at OKLA. ADMIN. CODE § 535:15-3-13(c) (providing a "pharmacist maintains the right not to fill the valid prescription"))).

The district court next considered whether a duty arose from Walgreens' conduct. Recognizing that, under Oklahoma common law, a party's actions can show it undertook a duty of care, the court parsed the summary judgment record and found Walgreens neither "established a contractual relationship with the Scholls," RV.17, nor "agreed, promised, or otherwise indicated it would begin the process of filling the prescription" until July 13, 2020, RV.7. The district court also was not persuaded that, under the circumstances here, Walgreens' corporate policies created any duty. Summing up, the court found "no evidence . . . that would permit a jury to conclude that, prior to July 13, 2020, Walgreens had . . . a duty to [J.]J.S. that would support a [] negligence claim." RV.22. On that basis, the district court concluded "there can be no recovery for negligence" and granted summary judgment to Walgreens. RV.22.

This timely appeal followed.

11

## II

"We review the grant of summary judgment de novo, and apply the same legal standard used by the district court under Federal Rule of Civil Procedure 56(c)." *Est. of Beauford* v. *Mesa County*, 35 F.4th 1248, 1261 (10th Cir. 2022). Urging reversal, the Scholls argue, *first*, the district court made a procedural mistake by granting summary judgment *sua sponte*—meaning based on arguments the parties never raised; and *second*, the district court erroneously concluded Walgreens owed no duty under Oklahoma law to fill J.J.S.'s prescription until July 13, 2020. We address each issue in turn and discern no error.

## III

## A

Rule 56 allows a district court to grant a motion for summary judgment "on grounds not raised by a party" so long as the nonmovant has "notice and a reasonable time to respond." FED. R. CIV. P. 56(f)(2). Granting summary judgment on a basis different than the one identified in a summary judgment motion is known as "sua sponte summary judgment[.]" *Snyder* v. *Beam Techs., Inc.*, 147 F.4th 1246, 1259 (10th Cir. 2025) (quoting *Oldham* v. *O.K. Farms, Inc.*, 871 F.3d 1147, 1151 (10th Cir. 2017)); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua*

12

*sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence."). "[T]he practice of granting summary judgment sua sponte is not favored." *Scull* v. *New Mexico*, 236 F.3d 588, 600 (10th Cir. 2000). We will reverse a grant of *sua sponte* summary judgment when the losing party both (1) lacked notice that it needed to marshal evidence about the issue ruled on by the district court and (2) suffered prejudice from that lack of notice. *See Johnson* v. *Weld County*, 594 F.3d 1202, 1214 (10th Cir. 2010) ("[E]ven if such notice is lacking, we will still affirm a grant of [*sua sponte*] summary judgment if the losing party suffered no prejudice from the lack of notice."). The appellate burden of showing a lack of notice and prejudice from the *sua sponte* summary judgment falls on the party alleging error. *See Oldham*, 871 F.3d at 1151.

The notice requirement asks whether a party "recogni[zed] that it had to come forward with all of [its] evidence[.]" *Safeway Stores 46 Inc.*, v. *WY Plaza LC*, 65 F.4th 474, 481 (10th Cir. 2023) (internal quotation marks omitted); *see A.M.* v. *Holmes*, 830 F.3d 1123, 1137 (10th Cir. 2016) (explaining lack of notice can be shown if "none of the [summary judgment] briefing discussed" the issue, leaving the losing party unaware "the issue was even presented for decision" on summary judgment); *Interstate Med. Licensure Compact Comm'n* v. *Bowling*, 113 F.4th 1266, 1284 (10th Cir. 2024) (recognizing lack of notice where "[n]either party [had] briefed the

13

issue" at summary judgment (internal quotation marks omitted)). Prejudice can be shown if the losing party points to some evidence it "could have produced or relied on to undermine the district court's [summary judgment] ruling." *Oldham*, 871 F.3d at 1151; *Snyder*, 147 F.4th at 1259–60 (explaining the losing party must "at least point[] to some evidence that he could have offered" to the district court to show a genuine dispute of material fact); *Atkins* v. *Salazar*, 677 F.3d 667, 678 (5th Cir. 2011) (*per curiam*) (explaining the losing party fails to show prejudice if that party "has no additional evidence or if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact" (internal quotation marks omitted)).

**B**

The Scholls claim they lacked notice that the district court would decide on summary judgment whether Walgreens had a duty to fill J.J.S.'s prescription before July 13, 2020. That lack of notice, the Scholls argue, denied them an opportunity to present contrary evidence before the district court ruled against them on summary judgment. Walgreens urges affirmance, arguing the Scholls "were certainly on notice of their obligation to put forth evidence of the sole cause of action they alleged in their own lawsuit." Resp. Br. at 42. We agree with Walgreens.

14

## 1

We begin with notice. The Scholls brought just one claim against Walgreens: negligence. Under Oklahoma law, "[t]he existence of a duty of care is the threshold question in any negligence action." *Marshall* v. *City of Tulsa*, 558 P.3d 1220, 1228 (Okla. 2024). In their motion for summary judgment, Walgreens argued it had no duty to fill the prescription from June 16 until July 13. In response, the Scholls' primary argument was "Defendants owed a duty" to J.J.S. over the entire period at issue in the complaint. RIII.22 (heading formatting omitted). As put by the Scholls in the first paragraph of their brief, Walgreens was wrong to argue "they owe no duty to [J.J.S.] or any other patient that they abandon." RIII.6.

The question of whether Walgreens owed a duty thus "did not arise out of the blue." *Kannady* v. *City of Kiowa*, 590 F.3d 1161, 1171 (10th Cir. 2010) (quoting *Bridgeway Corp.* v. *Citibank*, 201 F.3d 134, 140 (2d Cir. 2000)). Even assuming the Scholls were due more particularized notice—not just that the district court could rule on the existence of a duty but specifically a duty *before July 13*—the record shows the Scholls had such notice. As the Scholls acknowledge, the summary judgment motion argued Walgreens owed no duty from June 16 until July 13. That argument necessarily alerted the Scholls to "present evidence (as well as legal argument)" about any duty Walgreens owed before July 13. *A.M.*, 830 F.3d

15

at 1137. No surprise, the Scholls devoted several pages of their summary judgment response to arguing a duty existed before July 13. The Scholls expressly disagreed with Walgreens' "claim that there is no duty to fill a prescription within a certain amount of time[.]" RIII.23. The Scholls also chided Walgreens for "refus[ing] to act until July" even though it "received the prior authorization on June 16[.]" RIII.27.

Under these circumstances, where the summary judgment briefing clearly identified the issue the district court would decide, there can be no doubt the Scholls had notice to present their evidence about whether and when Walgreens owed a duty to fill J.J.S.'s prescription. *See A.M.*, 830 F.3d at 1137.

**2**

Even if we concluded the Scholls lacked notice, they have not shown prejudice. *See Rogers* v. *Riggs*, 71 F.4th 1256, 1263 (10th Cir. 2023) (explaining "we don't reverse" a *sua sponte* summary judgment "if the lack of notice didn't prejudice the losing party"); *Trujillo* v. *Amity Plaza*, __ F.4th __ (10th Cir. 2026) (recognizing, if a litigant waives an argument about prejudice for failure to adequately develop it in the opening brief, we can affirm the *sua sponte* summary judgment "on that basis alone"). Prejudice requires the losing party to point to "additional evidence . . . that would change the resolution of his case." *Scull*, 236 F.3d at 601. If the losing party

16

"had no additional evidence to bring, it cannot plausibly argue that it was prejudiced[.]" *Bridgeway*, 201 F.3d at 140. That requirement has a particular meaning where "discovery had proceeded to the point where the parties understood the material facts at issue." *Triumph Foods, LLC* v. *Campbell*, 156 F.4th 29, 40 (1st Cir. 2025) (internal quotation marks omitted). Prejudice generally cannot be shown where "the summary judgment came after the close of discovery" and the party complaining of *sua sponte* summary judgment "was not deprived of either its ability to ascertain facts or its opportunity to develop and present its case." *Gen. Universal Sys., Inc.* v. *Lee*, 379 F.3d 131, 145 n.29 (5th Cir. 2004) (*per curiam*); *see Rogers*, 71 F.4th at 1265 (recognizing a litigant cannot show prejudice "[w]here a legal issue has been fully developed, and the evidentiary record is complete" (quoting *Artistic Ent., Inc.* v. *City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (*per curiam*))).

The Scholls fail to identify any record evidence showing a genuine dispute of material fact on the duty issue or suggesting Walgreens should not be entitled to summary judgment as a matter of law. When pressed at oral argument, the Scholls admitted they could not point to any additional evidence in the record supporting their position that the district court had not already considered. We thus cannot say this is an appeal where the losing party "at least points to *some* evidence that [it] could have offered if

17

[it] had been told that the district court was going to enter summary judgment" on a particular issue. *Snyder*, 147 F.4th at 1259–60 (emphasis added).

Still, the Scholls insist *sua sponte* summary judgment "depriv[ed] them of the opportunity to present more evidence[,]" Reply Br. at 4, and in particular "evidence regarding the circumstances of Walgreens' agreement to fill the prescription[,]" Op. Br. at 14. We are not persuaded. It is important to remember Walgreens moved for summary judgment *after* discovery closed. The Scholls could have tried to develop further evidence by moving to extend or reopen the discovery deadline. *See* FED. R. CIV. P. 56(d)(2) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery[.]"). They neither asked the district court for a discovery extension nor press any discovery-related arguments on appeal.

In any event, the Scholls seem to conflate notice with prejudice. Whether a litigant had a chance to marshal its evidence before the district court is distinct from whether the litigant had the chance to develop evidence in the first place. Even assuming the Scholls lacked the former, we fail to see how they lacked the latter. The Scholls framed Walgreens' alleged "promise[]" to fill the prescription as the centerpiece of their lawsuit. RI.15.

18

It strains credulity to suggest the Scholls failed to foresee the need to "come forward with all of their evidence" on an essential element of their lawsuit's sole cause of action. *Jones* v. *Salt Lake County*, 503 F.3d 1147, 1152 (10th Cir. 2007) (brackets omitted) (finding no prejudice).

We reject the contention the district court procedurally erred by granting summary judgment *sua sponte*.

## IV

We next consider the Scholls' argument that the district court erroneously concluded Walgreens owed no duty to fill the prescription. The parties agree, under Oklahoma law, "[a] legal duty may arise by several means[,]" including "by statute or ordinance, common law duty, a duty imposed by implication of law or operation of law, and the relation or situation of the parties." *Knox* v. *Okla. Gas & Elec. Co.*, 549 P.3d 1260, 1269 (Okla. 2024). Here, the dispute can be understood as disagreements about whether a duty existed (i) under affirmative statements of law, such as Oklahoma statutes, regulations, and cases; or else (ii) as a result of Walgreens' conduct. The district court found nothing in Oklahoma law indicating Walgreens owed a duty to fill the Lupron Depot prescription before July 13, 2020. We agree with the district court.

**A**

This appeal centers on the grant of summary judgment by a federal court exercising diversity jurisdiction under 28 U.S.C. § 1332. "A district court sitting in diversity must apply the law of the state as it has been determined by the highest court of that state." *Mitchell* v. *Roberts*, 43 F.4th 1074, 1085 (10th Cir. 2022); *see* RV.4 & n.2 (citing *Erie*, 304 U.S. at 78).

"[W]e review de novo the district court's interpretation of state law." *Evanston Ins. Co.* v. *Desert State Life Mgmt.*, 56 F.4th 899, 905 (10th Cir. 2022). "To determine the relevant state law, we look to controlling state supreme court cases, but when none exist, we attempt to predict how the highest court would interpret the issue." *Bartch* v. *Barch*, 111 F.4th 1043, 1057 (10th Cir. 2024) (internal quotation marks omitted). "In conducting our inquiry, we are free to consider all resources available, including decisions of [state] courts," state statutes, and state regulations. *FDIC* v. *Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000) (internal quotation marks omitted). We are "guided by an overarching reticence to expand state law absent clear guidance from the state's highest court." *Lawson* v. *Spirit AeroSystems, Inc.*, 135 F.4th 1186, 1199 (10th Cir. 2025) (internal quotation marks and brackets omitted).

Plaintiffs allege a single claim for negligence under Oklahoma law. A negligence claim has three elements: "1) a duty owed by the defendant to

protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith* v. *City of Stillwater*, 328 P.3d 1192, 1200 (Okla. 2014). At issue here is the first element: duty. "Whether the defendant owed the plaintiff a duty of care is a question of law for the court in a negligence action. And, if the defendant did not owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law." *Lowery* v. *Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (internal citation omitted).

We review the district court's grant of summary judgment *de novo*, applying "the same legal standard used by the district court" under Rule 56. *Est. of Beauford*, 35 F.4th at 1261. That rule states summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To carry their burden, movants must produce "affirmative evidence negating an essential element of the non-moving party's claim" or show "the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Pelt* v. *Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (internal quotation marks omitted). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings[.]" *Thom* v. *Bristol-Myers*

21

*Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). Instead, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (quoting FED. R. CIV. P. 56(e)). "The summary judgment standard requires us to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Est. of Beauford*, 35 F.4th at 1261.

## B

Applying these standards, we now consider the Scholls' arguments in support of reversal. None is availing.

## 1

The Scholls first argue Oklahoma statutes, regulations, and judicial decisions show Walgreens had a duty to fill J.J.S.'s prescription. The Scholls insist the district court misinterpreted Oklahoma's Pharmacy Act and related regulations, which, in their view, establish pharmacists in Oklahoma have an "overarching duty to dispense medications lawfully prescribed." Op. Br. at 22–23 (first citing OKLA. ADMIN. CODE §§ 535:10-3-1.1, 535:10-9-2, & 535:15-3-2; and then citing OKLA. STAT. tit. 59, §§ 353.20.1(B), 353.20.2(A) & (C)). We see no error.

The Oklahoma Supreme Court has never weighed in on a pharmacist's duties under Oklahoma law. Like the district court, we must make an "*Erie*

guess" about how the Oklahoma Supreme Court would interpret the question of duty raised by this appeal. *Lawson*, 135 F.4th at 1198–99 & n.2. We thus consider "all resources available" to inform our prediction. *Schuchmann*, 235 F.3d at 1225. We conclude the Oklahoma Supreme Court would find state law imposed no duty on Walgreens to fill J.J.S.'s prescription before July 13, 2020.

We begin with the Oklahoma Court of Civil Appeals' decision in *Pharmcare Oklahoma, Inc.* v. *State Health Care Authority*, which is the "most comprehensive Oklahoma appellate court statement regarding the[] duties" at issue here. *Carista* v. *Valuck*, 394 P.3d 253, 257 (Okla. Civ. App. 2016). In *Pharmcare*, the court set out a range of actions subject to regulation under the Oklahoma Pharmacy Act, OKLA. STAT. tit. 59, § 353.1 *et seq*, and by the Oklahoma Board of Pharmacy, *see* OKLA. STAT. tit. 59, § 353.7(12). The court then explained a pharmacist's duties in Oklahoma are "clearly defined and limited under the Pharmacy Act." *Pharmcare*, 152 P.3d at 273 (emphasis added); *see also Carista*, 394 P.3d at 257 (quoting same).

The Pharmacy Act makes no mention of a duty to fill a prescription. *See* OKLA. STAT. tit. 59, § 353.1 *et seq*. And the rules promulgated by the state Board of Pharmacy pursuant to the Pharmacy Act likewise make no mention of such a duty. *See* OKLA. ADMIN. CODE § 317:30-5-70.1. For

example, Oklahoma Administrative Code § 535:10-3-1.2 lists twenty-nine distinct violations of a pharmacist's rules of professional conduct. Failing to fill a prescription is not one of them. The absence of any express requirement to fill a prescription in Oklahoma statutes and regulations, on its own, supports the conclusion that the Oklahoma Supreme Court would find no such requirement exists. *See Lawson*, 135 F.4th at 1199.

To the extent Oklahoma law affirmatively says anything about a pharmacist's duty to fill a prescription, it indicates there is no such duty. For example, "[a] pharmacist may refuse to dispense any prescription which appears to be improperly executed or which, in their professional judgment, is unsafe as presented." OKLA. ADMIN. CODE § 317:30-5-70.1; *see Pharmcare*, 152 P.3d at 273 (same). Further, when a "device or medication[]" is "medically necessary to prevent the death of or serious harm to the health of a patient," a "pharmacist *may*," but is not required to, "dispense without a prescription[.]" OKLA. STAT. tit. 59, § 353.20.2(C) (emphasis added).

Like the district court, we also find instructive the 2022 amendment to the state pharmacy regulations. *See* OKLA. ADMIN. CODE § 535:15-3-13(c). The amendment states, in relevant part, "The pharmacist maintains the right not to fill the valid prescription." *Id.* According to the state Pharmacy Board, the amendment "clarifies a pharmacist's right not to fill a valid prescription." 39 OKLA. REG. 160, no. 6, at 160 (Dec. 1, 2021). In our view,

the Oklahoma Supreme Court would conclude the 2022 amendment applies retroactively, since it is straightforwardly "a clarifying enactment." *Polymer Fabricating, Inc.* v. *Emps. Workers' Comp. Ass'n*, 980 P.2d 109, 114 (Okla. 1998) (holding "[w]here an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment that is to be given retrospective force."). We endorse the district court's conclusion that the 2022 amendment "expressly provided what was previously only implied: Oklahoma's comprehensive statutory and regulatory scheme does not impose a duty to fill prescriptions."[10] RV.12.

The Scholls advance no persuasive contrary argument. The Scholls first point to *Carista* v. *Valuck*, an Oklahoma Court of Civil Appeals case involving a wrongful-death lawsuit against a pharmacy following an alleged overdose of painkillers. *See* 394 P.3d at 255. The Scholls tell us *Carista*

---

[10] The Scholls argue the 2022 amendment cannot apply retroactively, because retroactive application "would destroy vested rights, including the right of the Scholl family to sue for negligence." Op. Br. at 24. This argument concerning vested rights proceeds from a mistaken premise: that pharmacists have a duty to fill prescriptions. We conclude no such duty existed under Oklahoma law even before the 2022 amendment. *See* 39 OKLA. REG. 160, no. 6, at 160 (Dec. 1, 2021); *Polymer Fabricating*, 980 P.2d at 114; *see N. Coltrane Cmty. Ass'n, Inc.* v. *Bd. of Cnty. Comm'rs of Okla. Cnty.*, 453 P.3d 913, 919–20 (Okla. Civ. App. 2019) ("Where a statute is ambiguous and an amendment is made which construes and clarifies prior language, a court should accept the amendment as legislative intent as to the meaning of the previous ambiguous language.").

holds "a pharmacist's duties include . . . dispensing prescriptions." Op. Br. at 21 (bolding omitted). The Scholls misstate the law. What the court actually said was a pharmacist's duties to a patient "include *accurately* filling and dispensing prescriptions." *Carista*, 394 P.3d at 257 (emphasis added) (quoting *Pharmcare*, 152 P.3d at 273). In describing *Carista*, the Scholls omit a key word—accurately—which modifies both "filling" *and* "dispensing." *See Potts* v. *Ctr. for Excellence in Higher Ed., Inc.*, 908 F.3d 610, 615 (10th Cir. 2018) ("[W]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012) (discussing the examples of "unreasonable searches and seizures" and "high crimes and misdemeanors" (italics omitted)))). A duty to fill a prescription accurately does not presuppose a duty to fill a prescription under any and all circumstances. Correctly understood, *Carista* does not support the Scholls.

The Scholls next contend the duties applicable to doctors in Oklahoma also apply to pharmacists. We are not convinced the Oklahoma Supreme Court would agree. Oklahoma law does not regulate physicians like pharmacists. *Compare Application of State Bd. of Med. Exam'rs*, 206 P.2d 211, 212–14 (Okla. 1949) (discussing physician regulation), *and State ex rel.*

26

*Okla. Bd. of Med. Licensure & Supervision* v. *Pinaroc*, 46 P.3d 114, 116 (Okla. 2002) (same), *with Pharmcare*, 152 P.3d at 273 (discussing pharmacist regulation); *see Davuluri* v. *State ex rel. Okla. Bd. of Med. Licensure & Supervision*, 10 P.3d 198, 210 (Okla. 2000) (Opala, J., concurring in part and dissenting in part) (laying out differences in the various licensing and regulatory schemes governing members of "healing" and "health-related" professions); *cf. Carista*, 394 P.3d at 259 (explaining, in the context of prescription abuse, "Pharmacists are neither physicians nor counselors on the use of illegal drugs").[11] Without authority to support their position, the Scholls invite us to hold that the professional duties of physicians under Oklahoma necessarily apply to pharmacists. The Scholls do not explain why the Oklahoma Supreme Court would endorse their position or why we should overcome our "reticence to expand state law." *Lawson*, 135 F.4th at 1199.

---

[11] In *Carista*, for example, the court looked to the Pharmacy Act and implementing regulations to understand a pharmacist's duties under Oklahoma law. 394 P.3d at 258–59. The court also favorably quoted *Pharmcare*'s conclusion that a "pharmacist's duty to [a] patient is clearly defined and limited under the Pharmacy Act." *Id.* at 257 (quoting *Pharmcare*, 152 P.3d at 273). Nothing in the Pharmacy Act or its implementing regulations treat pharmacists like physicians. The Scholls also acknowledged at oral argument that they are aware of no cases in Oklahoma treating pharmacists like physicians for purposes of assessing duties.

The Scholls also rely on Oklahoma Administrative Code § 535:10-3-1.2(11), which states a pharmacist commits professional misconduct by "[n]ot attempting to resolve a possible prescription error; or situation of potential harm to the patient when apparent or should have been apparent to the pharmacist." Op. Br. at 23, 26. We are not convinced this provision applies here. The Scholls cite no authority suggesting a rule of professional conduct creates a legal duty in tort. *Cf. Bd. of Cnty. Comm'rs of Harmon Cnty.* v. *Ass'n of Cnty. Comm'rs of Okla. Self-Insured Grp.*, 485 P.3d 234, 239 (Okla. 2021) (holding, in an attorney malpractice claim, a violation of the Oklahoma Rules of Professional Conduct "does not give rise to a cause of action, nor create the presumption of a legal duty, nor should such violation serve as the basis for civil liability"). And, in any event, the plain language of this regulation does not establish a duty to fill a prescription—only to "attempt[] to resolve a possible prescription error" or a "situation of potential harm to the patient" when it is "apparent or should have been apparent *to the pharmacist*." OKLA. ADMIN. CODE § 535:10-3-1.2(11) (emphasis added). The Scholls have neither alleged nor argued they ever spoke directly to a Walgreens pharmacist, nor have they pointed to evidence suggesting a pharmacist knew about the problems filling the Lupron Depot prescription.

28

In sum, there is no affirmative statement anywhere in Oklahoma law that, under the circumstances here, Walgreens owed a duty to fill J.J.S.'s prescription before July 13, 2020.

2

The Scholls next argue the evidence at summary judgment showed Walgreens' conduct created a duty to fill the prescription. *See Trinity Baptist Church* v. *Bhd. Mut. Ins. Servs., LLC*, 341 P.3d 75, 84 (Okla. 2014) (recognizing a duty can arise as a result of "the relationship between the parties" and the circumstances of their "common undertaking"). According to the Scholls, Walgreens took on a common-law duty "through its actions in both promising to seek out and *actually* seeking out authorization." Op. Br. at 16; *see* Op. Br. at 16 (citing *Harwood*, 522 P.3d at 481 ("One who undertakes, gratuitously or for consideration, to render services to another . . . is subject to liability to the other for physical harm resulting from his (or her) failure to exercise reasonable care to perform the undertaking[.]" (internal quotation marks omitted))). The Scholls' argument is unavailing because they point to no evidence of the promise they allege.

Recall, the Scholls claim Walgreens made a "promise" to fill J.J.S.'s prescription, which gave rise to a duty. RI.15. The district court concluded no such conduct-based duty existed, since the record turned up "no evidence

29

that Walgreens agreed to fill the prescription, stated that it would initiate a fill request, coordinated delivery, or otherwise gave any indication that it would undertake any obligation with respect to the prescription." RV.22. We agree with the district court's carefully considered conclusion.

At oral argument, the Scholls acknowledged the record contains no direct evidence of a promise or contractual relationship. *See* Oral Arg. at 16:21–17:02. At most, the record suggests Walgreens agreed to seek out insurance authorization before June 17. But a promise to inquire about preauthorization—which will determine whether a prescription can be filled—is not a promise to fill a prescription under any circumstances. The Scholls argue otherwise, relying on *Harwood* v. *Ardagh Group*, 522 P.3d 473 (Okla. 2022). That case does not help them. In *Harwood*, an employee sued his employer for negligence, arguing the employer had breached its duty to provide a safer crosswalk for employees using an employer-designated parking lot. *See id.* at 474. The Oklahoma Supreme Court concluded the employee plausibly alleged the employer undertook a duty, because the employer "represented to employees that it would make the passage across the highway as safe as possible," "previously had taken steps to make the crossing safer," and "failed to do so" on the occasion giving rise to the injury. *Id.* at 481. Here, unlike in *Harwood*, the asserted duty would not be a continuation of a course of conduct but would instead require Walgreens to

30

take actions it had not previously taken, had not represented that it would take, and was under no contractual obligation to take. On this putative course-of-conduct duty, therefore, the Scholls have failed to carry their burden on summary judgment to "go beyond the pleadings and 'set forth specific facts' . . . from which a rational trier of fact could find for the nonmovant." *Thom*, 353 F.3d at 851 (quoting FED. R. CIV. P. 56(e)).[12]

---

[12] Finally, the Scholls claim Walgreens effectively conceded at summary judgment that it owed a duty before July 13 to fill J.J.S.'s prescription, and the district court mistakenly overlooked that concession. The Scholls seek to invoke judicial estoppel, claiming Walgreens cannot change its position on appeal. This argument is waived. We do not see an argument in the Scholls' summary judgment brief that Walgreens conceded a duty. At most, the Scholls suggested Walgreens, in relying on its corporate policies, was impermissibly treating duty like "a light switch, to be turned on and off at a whim." RIII.24. But "a party does not preserve an issue merely by . . . presenting [it] to the district court in a vague and ambiguous manner, or by making a fleeting contention before the district court." *GeoMetWatch Corp.* v. *Behunin*, 38 F.4th 1183, 1206 (10th Cir. 2022) (internal quotation marks omitted). On appeal, the Scholls argue plain error only perfunctorily, and for the first time in their reply brief. *See* Reply Br. at 4 (arguing the district court "obviously erred by ignoring binding judicial admissions that had removed duty from dispute"); *Adams* v. *Fed. Aviation Admin.*, 168 F.4th 1271, 1284 n.8 (10th Cir. 2026) ("Cursory discussion on appeal fails to preserve an argument."); *Alex W.* v. *Poudre Sch. Dist. R-1*, 94 F.4th 1176, 1186 (10th Cir. 2024) ("We do not consider late-blooming arguments raised for the first time in a reply brief." (internal quotation marks omitted)). In any event, on the record before us, we see no "threat to judicial integrity" or reason to conclude the district court "was misled" where neither the district court nor the party invoking judicial estoppel accepted the concession the Scholls claim Walgreens made in the district court. *New Hampshire* v. *Maine*, 532 U.S. 742, 750–51 (2001) (internal quotation marks omitted); *see Fucci* v. *First Am. Title Ins. Co.*, 153 F.4th 1129, 1139 n.2 (10th Cir. 2025) ("[J]udicial estoppel does not apply when the earlier position failed to persuade the court.").

## V

We **AFFIRM** the district court's grant of summary judgment to Walgreens.